ESTHER M. FARMER, APPELLEE, V. JOHN R. FARMER, APPELLANT.

263 N. W. 2d 664

Filed March 15, 1978. No. 41385.

Wilbur C. Smith and Eileen A. Hansen, for appellant.

Terry A. Davis, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

WHITE, C. J.

This is an action for modification of a divorce decree entered on January 29, 1976, which contained the following provisions relevant to this appeal:

"*IT IS FURTHER ORDERED that there has been*

*born to Petitioner and Respondent, as a result of this marriage, one child, namely, Vicki Jonnette, born June 14, 1970;* that the Petitioner is a fit and proper person to have the care, custody and control of the minor child of the parties; and that the Respondent should pay over and to the Petitioner, for the support and maintenance of said minor child, by and through the Clerk of the District Court of Douglas County, the sum of $30.00 per week, commencing and payable in the sum of $30.00 on the date of this Decree and like payments each and every week thereafter to continue until said child shall either reach the age of her majority, marry, or become emancipated, whichever shall come first. * * *

"IT IS FURTHER ORDERED that the Petitioner shall become solely responsible and assume payment of all indebtedness of the parties, including [specific debts listed]." (Emphasis supplied.)

The petitioner filed an application for modification of the decree alleging that petitioner's name was inadvertently typed in place of respondent's as the party responsible for the indebtedness of the parties and seeking a correction thereof. Respondent filed various applications and motions contesting the implied finding of paternity in the decree, and seeking to have those portions of the decree impliedly finding him to be the father of Vicki Jonnette and requiring him to pay child support stricken.

On March 29, 1977, the District Court denied respondent's application and motion and changed "petitioner" to "respondent" in the decree, as requested by petitioner, nunc pro tunc as of January 29, 1976, to correct an error of the court, through oversight. The respondent has appealed. We affirm the judgment of the District Court.

Vicki Jonnette was born on June 14, 1970. The parties were married on January 26, 1972. The respondent contends on appeal that the District Court was without jurisdiction to determine the paternity

of Vicki Jonnette in this divorce proceeding. He also argues that since the child was born in 1970, and no paternity action had been brought against him within the time provided under section 13-111, R. R. S. 1943, that section 13-111, R. R. S. 1943, bars any determination of paternity in this action.

Section 42-351, R. R. S. 1943, provides in part: "In proceedings under sections 42-347 to 42-379, the court shall have jurisdiction to inquire into such matters, make such investigations, and render such judgments and make such orders, both temporary and final, as are appropriate concerning the status of the marriage, the custody and support of minor children * * *."

Section 42-364, R. S. Supp., 1976, provides in part: "When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified * * *."

Section 42-377, R. R. S. 1943, states: "Children born to the parties, or to the wife, in a marriage relationship which may be dissolved or annulled pursuant to sections 42-347 to 42-379, shall be legitimate unless otherwise decreed by the court, and in every case the legitimacy of all children conceived before the commencement of the suit shall be presumed until the contrary is shown."

The above-quoted statutes give the District Court complete jurisdiction over the custody, support, and welfare of all minor children who are touched upon by the divorce proceedings and all related issues. Section 13-109, R. R. S. 1943, provides that a child born out of wedlock is legitimate if the parents of that child subsequently marry. Sections 28-446 to 28-446.03, R. R. S. 1943, provide that a stepparent, during the period he is ceremonially married to the natural or adoptive parent of a minor child, is both civilly and criminally liable for the support of stepchildren.

As can be seen from the above statutory scheme, if respondent is the father of Vicki then she was legitimatized by his marriage to the petitioner. If he is not her father, then as a stepparent, having not adopted Vicki, he can only be compelled to provide for her support while ceremonially married to the petitioner, and not thereafter. It is obvious that the issue of paternity will touch upon and affect Vicki's support and her future welfare. Accordingly, we hold that, under the circumstances of this case, the District Court had jurisdiction to determine whether or not respondent was the natural father of Vicki. See Timmerman v. Timmerman, 163 Neb. 704, 81 N. W. 2d 135 (1957).

The respondent's contention that a determination he is the father of Vicki is barred by the statute of limitations provided for in section 13-111, R. R. S. 1943, is without merit. Section 13-111, R. R. S. 1943, relates specifically to actions to establish paternity brought pursuant to sections 13-106 to 13-113, R. R. S. 1943. Such an action is not involved here, but rather a determination of paternity incidental to a divorce action.

Holding as we do, that the District Court had jurisdiction to determine whether or not respondent is the natural father of Vicki, we next review the record to see if the court's determination that the respondent is the natural father of Vicki is supported by the evidence.

In a divorce action, the case is to be tried de novo upon the issues presented on appeal. The court in reaching its own finding, however, will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. Schuller v. Schuller, 191 Neb. 266, 214 N. W. 2d 617 (1974). Only a preponderance of the evidence is necessary to sustain a finding of paternity in Nebraska. Snay v. Snarr, 195 Neb. 375, 238 N. W. 2d 234 (1976).

In his pleadings, the respondent specifically denied that he was the father of any of petitioner's children. He testified that he had never lived with the petitioner prior to their marriage in 1972, nor had he had any sexual relations with the petitioner prior to the birth of Vicki in 1970. In his testimony he denied that he was Vicki's father and stated, that outside the time he was her stepfather, he had never accepted being the father of this child.

Introduced into evidence was an insurance policy from the National Life and Accident Insurance Company dated August 8, 1973. The respondent admitted that he had signed the application dated July 19, 1973, for this policy listing as beneficiaries Carla Brown, Lorrie Brown, and Vicki Farmer. The respondent testified that he had merely signed the application and that the agent filled it out. He testified that he did not know why Vicki was listed with his last name and the petitioner's other two children were not. The respondent admitted that he told Vicki he was her father but stated that he told all the petitioner's children the same, and only during the course of the marriage.

The consent decree was entered on January 29, 1976, and contained the provision regarding Vicki and her support quoted at the onset of this opinion. While the language of this provision may not be absolutely precise, it leaves a clear impression of an implicit finding that the respondent is Vicki's father. It is undisputed that Vicki was born June 14, 1970, and that the parties were ceremonially married about a year and a half later on January 26, 1972. The court categorically found that "there has been born to Petitioner and Respondent, * * * one child, namely, Vicki Jonnette, born June 14, 1970; * * *." It is apparent from the decree that the court intended the clause "as a result of this marriage" to mean "as a result of their union." The use of the term "marriage" instead of the word "union" which

was obviously intended, cannot form the basis of a substantive argument that Vicki is not the child of the respondent. To so hold would create a paradoxical absurdity out of the plain intent of the decree, its language, and the evidence in this case. Further, this decree was approved as to form and content by the respondent's attorney. The respondent admitted that he read the decree, received a signed copy of it, and knew it provided for the payment of child support. After the entry of the decree, the respondent made child support payments for Vicki.

Petitioner admitted that prior to going to the hospital for the birth of Vicki, she told her caseworker that a Nathaniel Williams was the father of the child. She testified that she did this because at the time the respondent was divorcing his then wife, adultery was being alleged, and she did not want to be dragged into this. On March 28, 1975, the petitioner went to the Douglas County welfare office to initiate an application for child support on behalf of Vicki. In connection therewith, she signed a document which names Nathaniel Williams as the father of the child.

The petitioner testified that she started dating the respondent in January 1968, and that she lived with him prior to their marriage. She identified the respondent as Vicki's father and stated that he was the only man she had sexual relations with between the time she met him and Vicki's birth. She testified that the respondent went to the hospital when Vicki was born. The petitioner stated that she had inquired about having Vicki's name changed to Farmer on her birth certificate but had not done it at the time of the trial.

Based upon our de novo review of the record, we conclude and find that, by a preponderance of the evidence, respondent is the natural father of the petitioner's child, Vicki Jonnette.

The respondent's final contention is that the Dis-

trict Court erred by changing the decree of January 29, 1976, as requested by the petitioner, by a nunc pro tunc order. The respondent does not dispute the substantive change but takes exception solely to the form by which it was accomplished, contending that a modification should have been made.

The purpose of a nunc pro tunc order is to correct the record which has been made so that it will truly record the action really had, but which through some inadvertence or mistake has not been truly recorded. O'Grady v. Volcheck, 148 Neb. 431, 27 N. W. 2d 689 (1947). The District Court corrected the decree in the proper manner. There is no merit to the respondent's objection.

The decree of the District Court is correct in all respects and is affirmed.

AFFIRMED.