DEBRA A. DEAN, APPELLEE, V. JERRY A. DEAN, APPELLANT.

552 N.W.2d 310

Filed August 13, 1996.   No. A-95-259.

John R. Brogan, of Brogan & Brogan, for appellant.

Michael H. Powell for appellee.

MILLER-LERMAN, Chief Judge, and MUES and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

Jerry A. Dean appeals from an order of the district court ordering the retroactive modification of Jerry's child support obligation to a date prior to the filing of the application for modification.

## STATEMENT OF CASE

Jerry and Debra A. Dean were divorced by decree on September 30, 1992. Debra was awarded custody of three of the parties' four minor children, Michelle, Marcena, and Jeremy, and Jerry was ordered to pay child support in the amount of $133.33 per child, or a total of $400 per month. The decree

further awarded custody of the parties' remaining minor child, Jason, to Jerry. Michelle reached the age of majority on June 5, 1993, at which time Jerry began paying support for only two children.

Jason began living with Debra in late August or September 1993. Debra filed an application for modification on October 28, 1994, seeking a change in custody regarding Jason and child support on his behalf. By order dated January 24, 1995, the court approved the parties' stipulation changing custody of Jason to Debra and further ordered Jerry, beginning September 1, 1993, to pay child support in the amount of $439 for his three minor children then in Debra's care. Jerry's motion for a new trial was overruled on February 8, 1995.

Evidence adduced at the January 5, 1995, hearing established that Jerry had paid no support for Jason since Jason began living with Debra in late August or September 1993.

## ASSIGNMENTS OF ERROR

Jerry asserts that the trial court erred in (1) modifying his child support obligation retroactively to a date prior to the filing of Debra's application for modification and (2) modifying his child support obligation for the two children who had always been in Debra's custody and for whom child support had already been paid in accordance with the amounts specified in the original decree.

## STANDARD OF REVIEW

The determination as to modification of a dissolution decree is a matter of discretion for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

## ANALYSIS

This case presents the issue of whether a child support modification may be ordered retroactive to a date prior to the filing of the application to modify. The general rule in Nebraska is to allow a modification of a child support order prospectively from the time of the modification order itself. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991). This general rule recognizes that support payments, ordered pursuant to a divorce decree and contingent only upon a subsequent order of the court, become vested in the payee as they accrue. *Id.* However, the Nebraska Supreme Court in *Maddux*, although rejecting retroactive modification in that case where the father entered court with "unclean hands," recognized that under certain circumstances, modification of a child support order retroactive to the filing date of the application for modification may be proper. (Citing *Goodman v. Goodman*, 173 Neb. 330, 113 N.W.2d 202 (1962) (accrued child support payments after date of filing canceled where mother deliberately removed children from state for purpose of keeping them away from father).) The *Maddux* court also recognized other circumstances in which a retroactive modification had been allowed. See, also, *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991) (credit allowed for amounts due for support of child for period of time in which child resided with noncustodial parent); *Williams v. Williams*, 206 Neb. 630, 294 N.W.2d 357 (1980) (doctrine of equitable estoppel applied to defeat claim for accrued child support payments where natural father reasonably believed that child had been adopted). While the aforementioned cases deal with the retroactive *decrease* of child support, the Supreme Court has also allowed the retroactive *increase* of child support to the date of the filing of the petition for modification.

In *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993), the Supreme Court affirmed a trial court's order requiring the father to pay support retroactive to the date the mother filed her petition for modification. In *Wulff*, a 1988 divorce decree awarded custody of the parties' two minor children to the mother. This decree was modified in April 1990, at which time the father's child support obligation was terminated after the court awarded him custody of the younger child and found that

the elder child had become emancipated because she was living independently. The modification order further required the mother to begin paying child support for the younger child. The mother sought another modification in August 1990, asserting that the elder child had moved back into her home. In a March 1991 order, the father was ordered to pay support for the elder child from September 1 through December 1, 1990, the month in which the elder child reached the age of majority. The Supreme Court affirmed this retroactive order of support. Thus, Nebraska has recognized that under certain circumstances, a parent may be ordered to pay support from the date of the filing of the application for modification, where he or she previously was not ordered to do so.

In the case now before this court, however, the trial court went beyond the authority provided by *Wulff, supra,* and ordered Jerry to pay support commencing September 1, 1993, a date prior to the filing of Debra's application for modification. The record shows that the dissolution decree of September 1992 awarded custody of Jason to Jerry. In late August or September 1993, however, Jason moved out of his father's home and into his mother's. Debra did not file her application for modification until October 1994. Based on the fact that Jason had resided with his mother since September 1993, the trial court ordered Jerry's child support obligation retroactive to September 1, 1993. In so deciding, the trial court relied upon authority allowing for the retroactive order of child support from the date of the child's birth in paternity cases. Debra cites similar authority in support of her argument that child support retroactive to September 1, 1993, was proper in this case. We disagree.

Debra's reliance upon *State on behalf of Matchett v. Dunkle,* 244 Neb. 639, 508 N.W.2d 580 (1993), is misplaced. In *State on behalf of Matchett,* a petition to establish paternity was filed on February 21, 1990, on behalf of a minor child born on March 9, 1988. Following a hearing on October 30, 1991, the trial court specifically declined to order retroactive support and ordered support commencing only from November 1, 1991. The Supreme Court disagreed, stating:

The plain words of [Neb. Rev. Stat.] § 43–1402 [(Reissue 1988)] require that an out–of–wedlock child be supported by its father "to the same extent and in the same manner" as a child born in wedlock. A parent is required to provide his or her child with the basic necessities of life. [Citation omitted.] It is obvious that such a requirement must begin at the time of the child's birth, for it is at that time that a child is most helpless and most dependent upon its parents for the child's very survival. This is true for any child, not just for a child born in wedlock.

When paternity is legally established, there is no rational basis to distinguish the support obligations of a father to a child born out–of–wedlock from the support obligations of a father to a child born in wedlock, and an out–of–wedlock child should be entitled to support from its father from the time of birth under the provisions of § 43–1402. We can perceive of no other way in which an out–of–wedlock child whose paternity is legally established could be supported by its father "to the same extent and in the same manner" as a child born in wedlock.

*Id.* at 643–44, 508 N.W.2d at 583.

In *State on behalf of Matchett*, the Supreme Court held that the statute required an award of retroactive child support. In that case, the mother sought, and the Supreme Court awarded, such support only from the date she had begun supporting the child, a point some time after birth, but before the petition was filed. The court's language, however, strongly intimates that the statute authorized support retroactive to the date of birth.

In reliance upon the foregoing, Debra asserts in her brief that "had Jason A. Dean been born on September 1, 1993, [Jerry] would be required to pay retroactive child support from and after September 1, 1993." Brief for appellee at 3. Debra also contends that if retroactive support is denied in this case, children in paternity actions would be treated differently from children in dissolution actions. Debra, however, overlooks a key distinction between a paternity action and an action seeking the modification of a dissolution decree. Whereas the former

involves no prior order of the court, the latter, by necessity, involves a previous order of the court in which the issues of child custody and support ·have already been addressed, or, at least, were capable of being addressed. ·

In the majority of modification cases, the parent whose support obligation is being modified is already obligated under a prior support order for the child. While the fact that Jerry was not previously ordered to pay support for Jason adds a new twist, we believe *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993), indicates that the Supreme Court would view the present case as a modification of child support, rather than an initial child support order. See, also, *In re Marriage of Eilers*, 526 N.W.2d 566 (Iowa App. 1994). As a consequence, the parties were acting under a previous court order which had already determined the custody and support of Jason. The parties were entitled to rely upon the provisions of this order until either an order of modification was entered or an application for modification was filed. This case is distinguishable from paternity actions in which there is no previous order of the court deciding the issue of support. Debra does not cite us to, nor does our research disclose, any child support *modification* cases in which a court has allowed child support retroactive to a date prior to the date of the filing of the application.

To the contrary, our research discloses that a court is without authority to issue such an order in a child support modification action. *Hoover v. Hoover*, 2 Neb. App. 239, 508 N.W.2d 316 (1993), involved a modification action in which the trial court ordered a father to pay 35 percent of all unreimbursed expenses incurred by the mother as a result of the minor child's medical problems. On appeal, the father argued that the trial court was without authority to enter a retroactive judgment requiring him to pay expenses incurred prior to · the date of filing the application for modification. Noting· the general rule, as espoused by the court in *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991), that modification orders are generally prospective, unless circumstances warrant a modification retroactive to the date of the filing of the petition, this· court found that the same rules should apply to an order to pay

*expenses* incurred prior to the filing of the application for modification. *Hoover, supra.* Thus, this court held that the trial court abused its discretion by ordering the father to pay a percentage of expenses incurred prior to the filing of the application. This court limited the order to apply to expenses incurred since the date of the filing. Similarly, *Rood v. Rood, ante* p. 455, 545 N.W.2d 138 (1996), involved a modification action brought by a father to decrease the amount of arrearage owed by him for past–due child support. In *Rood,* at the time the modification action was brought, the minor children were above the age of 19 years. This court affirmed the trial court's decision denying retroactive modification, noting that where the father's support obligation had terminated over 1 year before he sought modification, *any* retroactive modification would have been prohibited.

In sum, the retroactive modification of child support in Nebraska has been limited to the date of the filing of the application for modification. See, *Wulff, supra; Maddux, supra; Rood, supra.* We find no authority to impose a child support obligation retroactive to a date prior to the filing of the application to modify. Therefore, in this case, the district court was prohibited from ordering Jerry to pay child support retroactive to a date prior to the filing of the application to modify.

In reaching this result, we are also guided by Part D, the Child Support Enforcement Act (Act), of Title IV of the Social Security Act, codified at 42 U.S.C. § 651 et seq. (1994). This Act establishes a federal–state scheme for the establishment and enforcement of child support. If a state wishes to receive federal funds in providing child support enforcement services, it must develop and implement a program which complies with the requirements of federal law. In particular, the state must have in effect laws requiring the use of all procedures for the improvement of child support enforcement effectiveness described in 42 U.S.C. § 666. See 42 U.S.C. § 654(20)(A). The Act requires states to enact legislation to prohibit the retroactive modification of child support orders to maintain a conforming child support enforcement program. Specifically, states must enact a procedure which provides that child support

orders are not subject to retroactive modification, "except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given . . . ." 42 U.S.C. § 666(a)(9)(C).

While other states have enacted legislation substantially similar to that outlined in 42 U.S.C. § 666(a)(9)(C), we find no similar provision in the Nebraska statutes or the Nebraska Child Support Guidelines. We need not and do not determine, for purposes of this appeal, the applicability of this Act. We simply note that, thus far, Nebraska case law has been consistent with the Act and that the Act supports the conclusion we reach here.

Other state courts have reached similar conclusions. For example, the Supreme Court of North Dakota, explaining the rule that modification orders may be made effective from the date of the filing of the petition or any date thereafter, stated: " 'Once a petition to modify a support order has been filed, the respondent is on notice that circumstances relevant to the determination of child support have changed and that the terms of the support obligation will change upon a judicial determination that the changed circumstances are material.' " *Mahoney v. Mahoney*, 538 N.W.2d 189, 196 (N.D. 1995) (quoting *Olson v. Garbe*, 483 N.W.2d 775 (N.D. 1992)). The applicable statute in North Dakota provides in relevant part: " 'Any order directing any payment or installment of money for the support of a child is, on and after the date it is due and unpaid . . . [n]ot subject to retroactive modification.' " *Id.* Although silent with regard to the time period during which a petition is pending, the court in *Mahoney*, citing 42 U.S.C. § 666(a)(9) (1988), reiterated the rule established by that state's case law that modification is permitted retroactive to the date the motion to modify has been filed and served.

The importance of notice to the noncustodial parent was likewise emphasized in *Meyer v. Meyer*, 17 Ohio St. 3d 222, 478 N.E.2d 806 (1985). In *Meyer*, the parties were divorced in 1975 and custody of the three minor children was granted to the father. Custody of the eldest child was subsequently changed to the mother by agreement, and the father was ordered to pay child support. Custody of the remaining two children was also

subsequently changed to the mother pursuant to court orders; however, no support was ordered for either. Subsequently, the mother filed a motion requesting reimbursement from the father for the reasonable amount of support for the period of time since the change of custody was granted. Describing such an order of reimbursement as "manifestly unfair to the noncustodial parent," the court in *Meyer* stated:

It is true that we have in the past ruled that child support orders are subject to modification. [Citations omitted.] However, these rulings apply to the support orders in *prospective* fashion only, and solely to *existing* support orders. In such cases, the supporting spouse has ample notice on which to prepare his or her finances. This would not be true in the case of a *retroactive* order that *establishes* a support obligation. ·

*Id.* at 223–24, 478 N.E.2d at 808.

Thus, whether based upon the theory that support "vests," thereby warranting the denial of a retroactive decrease in child support, see *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991), or the "notice" theory employed by the *Meyer* court to decline the retroactive *imposition* or *increase* of child support, the retroactive modification of child support obligations is limited to the filing date of the application to modify.

The trial court's order requiring Jerry to pay support in the amount of $439 commencing on September 1, 1993, was an abuse of discretion. Under the circumstances of this case, however, we believe that an order retroactive to November 1, 1994, the first month after the application to modify was filed, is proper. Jason was living with Debra as of this date, and Jerry was thereafter put on notice that he might be subject to an increased child support obligation. As neither party challenges the amount of child support ordered by the trial court, we therefore order Jerry to pay $439 for the support of Jason, Marcena, and Jeremy, commencing on November 1, 1994, with this amount decreasing to $350 for the support of two minor children, and $226 when only one minor child is remaining.

Jerry argues in his second assigned error that by computing his obligation in accordance with the child support guidelines

and making his obligation retroactive, his support obligation to Marcena and Jeremy, upon which he was fully paid as of the date of trial, was also retroactively increased. To the extent that the order of modification affected Marcena's and Jeremy's support retroactively to a point before the application was filed, that error has been noted and corrected earlier in this opinion. The balance of Jerry's argument is without merit.

The original dissolution decree of September 1992 provided for a payment of child support by Jerry "for the benefit of said minor children at the rate of $133.33 per month, per child, or a total of $400 per month." This method, which merely takes a set amount and divides it by the number of children to be supported, is directly contrary to the child support guidelines in effect today, as well as those in effect in September 1992.

Jason's change of custody necessarily required recomputing the child support award for all the children in Debra's custody because a proper application of the guidelines requires the order to specifically set forth the amount of child support which will be due as the obligation to support each child terminates, with the amount for each possibility calculated separately in accordance with table 1 of the guidelines. Therefore, Jerry's contention that the court modified support for Marcena and Jeremy, without Debra's seeking it, is without merit. That the court's initial decree erroneously awarded separate, equal amounts for each child does not change this result.

Jerry's assertion that the support modification effectively increased his obligation to Marcena and Jeremy, despite his having already paid his obligation "in full" as required by the original decree, also ignores the child support guidelines. When split custody is awarded, worksheet 2 of the guidelines must be applied. It anticipates that the total amounts owed by each parent for the support of the child or children in the other's custody be offset, with the party owing the greater amount ordered to pay the difference to the other parent. The record before us does not establish what, if any, calculation was used as the basis for the trial court's initial support order. If we assume that support was ordered in compliance with the split custody calculation worksheet, Jerry's obligation to Marcena and Jeremy was reduced in that calculation by the amount owed

him from Debra for the support of Jason. Yet, in fact, he provided no support for Jason since August or September 1993. Certainly as of the date of the filing of the application, Jerry was no longer entitled to this offset.

We conclude that Jerry's support obligation for the three minor children should commence on November 1, 1994, in the amount of $439 per month, with credit given him for those amounts due and paid under the prior order on or after that date for the support of Marcena and Jeremy. Jerry's child support obligation for two children is $350 per month and for one minor child, $226.

## CONCLUSION

The trial court abused its discretion by modifying child support retroactively to a date prior to the filing of the application to modify. However, ordering support retroactive to the filing date of the application is proper here, where the child for whom support is sought was living with the parent seeking the modification at said time and was receiving no support from the other parent.

AFFIRMED AS MODIFIED.